UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BUREK, INC.,

    Plaintiff,

vs.                                    CASE NO:

AMGUARD INSURANCE COMPANY,

    Defendant.
_____/

## COMPLAINT

Plaintiff, Burek, Inc., d/b/a Pinch-A-Penny #65 and Pinch-A-Penny #100, sues Defendant, AmGuard Insurance Company ("AmGuard"), a Berkshire Hathaway Insurance Company, for breach of the duty of good faith and alleges:

1. This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332 because the amount in controversy exceeds $75,000, and there is complete diversity of citizenship between the Plaintiff, which is incorporated under the laws of Florida and has its principal place of business in Florida, and the Defendant, which is incorporated under the laws of Pennsylvania and has its principal place of business in Pennsylvania.

2. The court has personal jurisdiction over AmGuard because AmGuard operated, conducted, engaged in, or carried on a business in Florida.

3. This court is the proper venue because a substantial part of the events or omissions giving rise to this action occurred within this judicial district.

4. Burek, Inc., has been a franchisee of a swimming-pool-supply company known as "Pinch A Penny" since 1998.

5. On or before April 23, 2019, Plaintiff, Burek, Inc., paid $71,253.00 in premiums to AmGuard Insurance Company for Business Auto coverage from April 23, 2019 to April 23, 2020, as described in the contract identified as Policy Number BUAU066463 and attached as **Exhibit 1** ("AmGuard policy").

6. The AmGuard policy provided AmGuard would pay up to $1,000,000 of Burek, Inc.'s liability for bodily injury caused by an accident and resulting from the ownership, maintenance or use of Burek, Inc.'s 2005 Ford F-150 with VIN 1FTRX12W05NB48220 ("truck").

7. The AmGuard policy provided AmGuard with exclusive and total control over the investigation and settlement of liability claims against Burek, Inc.

8. Burek, Inc. also paid Hartford Casualty Insurance Company ("Hartford") for an Umbrella Liability Policy providing $1,000,000 of liability insurance in excess of AmGuard's $1,000,000 liability insurance limit.

9. On January 9, 2020, Benjamin Douglas Ehas ("Ehas"), while in the course and scope of employment for Burek, Inc., used the 2005 Ford F-150 with VIN 1FTRX12W05NB48220 ("truck") with Burek, Inc.'s permission, when it careened

onto the sidewalk of Bayshore Boulevard in Tampa, killing a pedestrian named George Gage.

10. On or before January 16, 2020, AmGuard and Hartford knew that the liability exposure to Burek, Inc., from the fatal collision with George Gage would exceed AmGuard's $1,000,000 policy limit.

11. On or before January 20, 2020, AmGuard knew that:

   a. At 11:13 a.m., while driving Burek, Inc's truck, Ehas lost control of the truck and swerved off the road, over the sidewalk and into a balustrade.

   b. The impact caused the pedestrian, George Gage, to fall into Tampa Bay where two Good Samaritans jumped into the water and retrieved him before paramedics arrived.

   c. George Gage was taken to Tampa General Hospital where he was pronounced dead.

   d. Witnesses described the truck traveling at a high rate of speed – estimated 60 to 70 mph in a 35 mph zone – just before the accident.

   e. The tracker on the truck appeared to show a speed of 87 mph moments before the crash.

   f. Ehas' blood alcohol content was 0.234, which is nearly three times the limit of .08.

    g. Ehas also took Xanax the night before, smoked marijuana at 7:00 a.m. that day, followed by a dose of prescription Suboxone (a medication used to treat opioid dependence), and a double shot of Fireball Cinnamon Whisky shortly before the accident.

    h. Benjamin Ehas' conduct was at least gross negligence and that it was a case of clear liability.

    i. Burek, Inc., would also be held liable to the same extent Ehas was found liable for negligence.

    j. A jury was likely to award <u>at least $2 million</u> to the surviving spouse alone.

    k. Based on the known facts, the policy limits needed to be <u>immediately</u> paid to the Estate.

    l. AmGuard needed to work <u>immediately</u> with the umbrella carrier, Hartford, to resolve the claim within the available limits.

12. On January 24, 2020, seeking to resolve the wrongful death claim in exchange for payment of Burek, Inc.'s liability insurance limits, rather than file a lawsuit, attorneys for Susan Gage, the widow of George Gage, and George Gage's survivors ("Gage family") wrote to request disclosure of the insurance information required by Florida Statute, section 627.4137.

13. On or before January 27, 2020, AmGuard and Hartford both knew Burek, Inc., was faced with a very serious accident that most likely would result in excess exposure over and above both the $1,000,000 AmGuard policy limit and the $1,000,000 excess policy with Hartford.

14. On February 3, 2020, Burek, Inc., provided the attorneys for the Gage family with a formal disclosure of its $2,000,000 insurance limits with AmGuard and Hartford and represented the Gage family's request had also been forwarded to AmGuard and Hartford.

15. On February 3, 2020, Susan Gage was appointed personal representative of the estate of George Gage ("Gage Estate").

16. On or before February 3, 2020, AmGuard and Hartford knew Burek, Inc.:

   a. was concerned about the aggravating facts of the claim,

   b. wanted the claim resolved promptly for the protection of Burek, Inc,

   c. wanted to be advised immediately by AmGuard and Hartford about Burek, Inc.'s coverage for the wrongful death claim,

   d. wanted to be advised immediately by AmGuard and Hartford about whether they would tender the policy limits to settle the claim,

   e. wanted to ensure AmGuard and Hartford responded promptly to the January 24, 2020 letter from the attorneys for the Gage family seeking insurance information, and

    f. wanted to help AmGuard and Hartford towards a prompt resolution of the claim.

17. On February 25, 2020, Burek, Inc., provided certified copies of the insurance policies with AmGuard and Hartford to the attorneys for the Gage family.

18. From January 9, 2020 to May 11, 2020 (123 days), AmGuard made no settlement offer and did absolutely nothing to attempt to resolve the wrongful death claim with the Gage family, the Gage Estate, or their attorneys.

19. From January 9, 2020, to May 11, 2020 (123 days), the only communication Burek, Inc., received from AmGuard was on February 28, 2020, when AmGuard wrote a letter explaining that it would not renew Burek, Inc.'s Business Auto Policy on April 23, 2020, because of the "unfavorable loss experience" AmGuard had suffered as a result of the Gage wrongful death claim.

20. On April 18, 2020, as a result of AmGuard's failure to make any settlement offer or otherwise make any effort whatsoever to resolve the wrongful death claim with the Gage family, the Gage Estate, or their attorneys, the Gage Estate filed a wrongful death lawsuit against Burek, Inc., and other insureds of AmGuard.

21. On April 23, 2020, attorneys for the Gage Estate wrote to say:

> [M]onths after this accident[,] nobody has offered a single dollar in settlement. This was a clear liability death case caused by an intoxicated driver. From the first day it was reported, everyone involved knew the legal damages were far greater than all available insurance. After my clients waited months for a settlement offer they finally, and reluctantly finally decided to file suit last week. Obviously they would have

6

preferred to settle without a lawsuit if a settlement had been offered – almost every client in these circumstances would. Even now, in the face of the lawsuit, the only news I could report to them is that the insurance company's lawyer was asking a hypothetical question about what my clients would do *if* an offer were made.

22. On June 7, 2022, following a jury verdict, the *Final Judgment Against Defendants* was entered against Burek, Inc., in the amount of $17,500,000. The *Amended Final Judgment* is attached as **Exhibit 2** ("Final Judgment").

23. The Final Judgment let execution issue against Burek, Inc., for $17,500,000 plus interest in accordance with section 55.03, Florida Statutes and reserved jurisdiction to the trial court to enter further orders concerning execution on the assets of Burek, Inc., pursuant to the Final Judgment.

24. On June 10, 2022, Burek, Inc., moved the trial court to stay execution of the judgment but the court denied the motion on July 5, 2022.

25. On August 25, 2022, AmGuard elected to appeal the Final Judgment on behalf of its insureds, knowing it could prevent execution of the Final Judgment against assets of Burek, Inc., by posting a *supersedeas* bond or by accepting the Gage Estate's repeated offers to stay execution of the Final Judgment while a declaratory judgment action was pursued to determine whether AmGuard and/or Hartford had breached their duties of good faith.

26. On or before December 13, 2022, AmGuard knew it needed to immediately post a *supersedeas* bond to stay execution of the judgment or negotiate a stay of

7

execution with the Gage Estate or Burek, Inc.'s business would be totally destroyed by execution on the judgment while AmGuard pursued an appeal.

27. From June 7, 2022 to the date of this Complaint, AmGuard has done absolutely nothing to attempt to secure a stay of execution on the assets of Burek, Inc., completely refusing to either post a *supersedeas* bond or negotiate a stay of execution with the Gage Estate.

28. Because of AmGuard's failure to settle the claim for the wrongful death of George Gage and because of AmGuard's subsequent refusal to post a *supersedeas* bond or negotiate a stay of execution, on December 19, 2022, in order to mitigate the damage to Burek, Inc., of a judicial auction of the assets of Pinch-A-Penny #65 ("Store 65"), Burek, Inc., sold the assets of Store #65 for a liquidation value of $1,550,000.

29. Store #65, which had been in business for approximately 30 years, had a market value as a going concern substantially greater than the value of the liquidated assets resulting from execution on the Final Judgment.

30. As of the date of this Complaint, Burek, Inc's other store, Pinch-A-Penny #100 is also being executed upon by the Gage Estate.

31. Because of AmGuard's failure to settle the claim for the wrongful death of George Gage and because of AmGuard's continuing refusal to post a *supersedeas* bond and failure to negotiate a stay of execution, in order to mitigate the damage to

Burek, Inc., of a judicial auction of the assets of Pinch-A-Penny #100 ("Store 100"), Burek, Inc., is attempting to secure a purchaser who will agree to pay a reasonable value to for the assets of Store #100.

32. Store #100, which has been in business for approximately 30 years, has a market value as a going concern substantially greater than the value of the liquidated assets resulting from execution on the Final Judgment.

33. AmGuard owed a fiduciary duty of good faith to act in Burek, Inc.'s best interests by protecting Burek, Inc., from judgments in excess of the insureds' policy limits and additional losses from execution on those judgments.

34. AmGuard's duty of good faith required that AmGuard:

    a. settle the claim for the wrongful death of George Gage when, under all the circumstances, it could have and should have done so, had it acted fairly and honestly toward Burek, Inc., and with due regard for Burek, Inc.'s interests,

    b. use the same degree of care and diligence as a person or ordinary care and prudence should exercise in the management of his own business,

    c. advise Burek, Inc., of settlement opportunities,

    d. advise Burek, Inc., as to the probable outcome of the litigation,

    e. warn Burek, Inc., of the possibility of an excess judgment,

    f. advise Burek Inc., of any steps Burek, Inc., might take to avoid an excess judgment,

    g. investigate the facts,

    h. give fair consideration to a reasonable settlement under the facts,

    i. settle, if possible where a reasonably prudent person, faced with the prospect of paying the total recovery would have settled, and

    j. affirmatively initiate settlement negotiations where liability was clear and injuries so serious that a judgment in excess of the policy limits was likely.

35. AmGuard breached its duty of good faith to Burek, Inc., when it failed to:

    a. settle the claim for the wrongful death of George Gage when, under all the circumstances, it could have and should have done so, had it acted fairly and honestly toward Burek, Inc., and with due regard for Burek, Inc.'s interests,

    b. use the same degree of care and diligence as a person or ordinary care and prudence should exercise in the management of his own business,

    c. advise Burek, Inc., of settlement opportunities,

    d. advise Burek, Inc., as to the probable outcome of the litigation,

    e. warn Burek, Inc., of the possibility of an excess judgment,

    f. advise Burek Inc., of any steps Burek, Inc., might take to avoid an excess judgment,

    g. investigate the facts,

    h. give fair consideration to a reasonable settlement under the facts,

    i. settle, if possible where a reasonably prudent person, faced with the prospect of paying the total recovery would have settled, and

    j. affirmatively initiate settlement negotiations where liability was clear and injuries so serious that a judgment in excess of the policy limits was likely.

36. As direct consequential damages resulting from AmGuard's breach of its duty of good faith and its refusal to secure a stay of execution of the Final Judgment against the assets of Burek, Inc., by posting a *supersedeas* bond or negotiating a stay of execution with the Gage Estate, Burek, Inc., lost the market value of Store #65 as a going concern and is expected in the future to suffer the loss of the market value of Store #100 as a going concern, regardless of whether the Final Judgment is reversed on appeal.

37. As direct consequential damages resulting from AmGuard's breach of its duty of good faith and its refusal to secure a stay of execution of the Final Judgment against the assets of Burek, Inc., by posting a *supersedeas* bond or negotiating a stay of execution with the Gage Estate, Burek, Inc., also had to pay the Gage Estate

$204,785.42 in cash and assign a promissory notes in the principal amounts of $750,000 and $89,269.32 for total out-of-pocket payments of $1,044,054.74.

38. Burek, Inc., is the named insured under the AmGuard policy and is obligated to pay attorneys to pursue a judgment against AmGuard Insurance Company. Based on section 627.428 of the Florida Statutes, AmGuard is an insurer who is obligated to pay attorney's fees of the named insured, Burek, Inc., for this lawsuit, upon the rendition of a judgment, decree, or confession of judgment against AmGuard in favor of Burek, Inc.

WHEREFORE, Plaintiff, Burek, Inc., demands judgment against Defendant, AmGuard Insurance Company for:

    a. the market value of Store #65 as a going concern,

    b. the market value of Store #100 as a going concern,

    c. $1,044,054.74 in out-of-pocket payments,

    d. the unsatisfied amount of the Final Judgment upon finality,

    e. interest on those elements of damages upon which interest can be recovered,

    f. the costs of this action,

    g. attorney's fees,

    h. any other damages allowed by law,

and demands a trial by jury on all issues so triable.

/s/ *Brandon Cathey*
**Brandon Cathey**
Fla. Bar. No. 941891
**Stephanie Miles**
Fla. Bar. No. 15516
CATHEY & MILES, P.A.
76 4th Street N #2005
St. Petersburg, FL 33731
(727) 308-2222
Lit@CatheyMiles.com
**J. Scott Slater**
Fla. Bar No. 869171
SLATER GRANT PLLC
14502 N. Dale Mabry Hwy, Suite 104
Tampa, FL 33618
(813) 995-6444
SSlater@SlaterGrant.com
*Counsel for Burek, Inc.*